**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, 815 Sixteenth Street N.W. Washington, DC 20006, <br><br> Plaintiff, <br><br> v. <br><br> KEITH E. SONDERLING, United States Acting Secretary of Labor, 200 Constitution Avenue N.W. Washington, DC 20210, <br><br> ELISABETH MESSENGER, Director, Office of Labor-Management Standards, 200 Constitution Avenue N.W. Washington, DC 20210, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> Civil Action No. 26-2061 |

**<u>COMPLAINT</u>**

1.      This is an action for review of agency rulemaking under the Administrative Procedure Act ("APA"). Plaintiff asks this Court to hold unlawful and set aside the Final Rule entitled "Labor Organization Annual Financial Reports" (the "Rule") issued by Defendants on June 1, 2026. *See* 91 Fed. Reg. 32556 (amending 29 C.F.R. §§ 402, 403, 408) (attached as Exhibit A).

2.      The Rule makes numerous significant changes to labor organizations' annual financial reporting requirements under Title II of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 431 *et seq.*, including promulgating an entirely new form—the Form LM-2 Long Form Labor Organization Annual Report ("Form LM-2 Long Form")—that certain labor organizations must file. The Rule takes effect on July 1, 2026 and has

immediate consequences for labor organizations whose fiscal year begins on or soon after the effective date, which is the case for Plaintiff and many of its affiliates.

3.      The promulgation of the Rule has blindsided Plaintiff and its affiliates. In October 2020, the United States Department of Labor ("DOL") issued a notice of proposed rulemaking that proposed sweeping changes to labor organizations' financial reporting requirements. Plaintiff and many of its affiliates commented on that proposed rule. But the DOL announced in March 2021 that it had *withdrawn* that proposed rulemaking. And when the DOL, in July 2025, issued a *new* notice of proposed rulemaking on a narrow topic that was also covered in the withdrawn October 2020 notice, it never mentioned that it was still considering the sweeping changes proposed in the long-withdrawn rulemaking. Still less did DOL suggest that it might impose those changes as a final rule with no further input from the regulated community and with only thirty days' lead time—the shortest lead time it has ever provided for imposing new reporting obligations on unions for the Form LM-2.

4.      Defendants' promulgation of the Rule violates the APA several times over. First, the agency did not comply with its statutory obligation to provide for notice-and-comment before issuing a final rule. Second, the Rule's July 1, 2026 effective date is arbitrary and capricious, as the short-notice effective date imposes substantial and unjustified burdens on labor organizations whose fiscal year begins on July 1, 2026, or in the months thereafter. Finally, several individual aspects of the Rule are substantively flawed, as they are both arbitrary and capricious and in excess of the DOL's statutory authority.

5.      Plaintiff seeks a preliminary injunction postponing the effective date of the Rule, as well as permanent relief setting aside the Rule and enjoining its implementation.

## JURISDICTION AND VENUE

6.     This is a suit for review of final agency action under the APA. 5 U.S.C. §§ 701–706. This Court has jurisdiction over the action pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1331 and 1337.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e), as Defendants are located in this district, the challenged Rule was issued in this district, and Plaintiff is headquartered here.

## PARTIES

8     Plaintiff American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 65 national and international labor organizations that have a total membership of 15 million working people. The AFL-CIO brings this action on its own behalf and on behalf of its member unions and their affiliated intermediate and local unions.

9.     Plaintiff AFL-CIO is subject to Title II of the LMRDA and has total annual receipts in excess of $40 million. Plaintiff is therefore required under the challenged Rule to file the Form LM-2 Long Form.

10.     Plaintiff AFL-CIO has member national and international unions, the vast majority of which are covered by Title II of the LMRDA, as are those member unions' affiliated local and intermediate unions. Many of those unions have total annual receipts in excess of $350,000 and are therefore required under the challenged Rule to file the Form LM-2 Labor Organization Annual Report ("Form LM-2"). A subset of those unions have total annual receipts in excess of $40 million and are therefore required under the challenged Rule to file the Form LM-2 Long Form. Plaintiff AFL-CIO has standing to bring this litigation on behalf of such member unions and affiliates. Indeed, two of the AFL-CIO's core "objects and principles" are

"to protect the autonomy of each affiliated national and international union," and to "preserv[e] the independence of the labor movement from political control."[1]

11.    Plaintiff AFL-CIO operates on the basis of a fiscal year that runs from July 1 through June 30. The same is true of approximately 600 other labor organizations that will be required to file a Form LM-2 or Form LM-2 Long Form, the significant majority of which are either AFL-CIO member unions or affiliates of those member unions.

12.    Defendant Keith E. Sonderling is the Acting Secretary of Labor.  He is sued in his official capacity pursuant to 5 U.S.C. § 703.

13.    Defendant Elisabeth Messenger is the Director of the Office of Labor-Management Standards. She is sued in her official capacity pursuant to 5 U.S.C. § 703. The Acting Secretary of Labor has delegated the responsibilities given to him under the LMRDA to the Director of the Office of Labor-Management Standards. *See* Delegation of Authority and Assignment of Responsibility to the Director, Office of Labor-Management Standards, 77 Fed. Reg. 69376 (Nov. 16, 2012).

**FACTS**

14.    Under Title II of the LMRDA, every covered labor organization must file with the DOL an annual financial report containing certain information "in such detail as may be necessary accurately to disclose its financial condition and operations for its preceding fiscal year." The statute sets forth six categories of information that must be in each labor organization's financial report. 29 U.S.C. § 431(b).

---

[1] *See Constitution of the AFL-CIO*, art. II ¶¶ 14–15 (2022), https://aflcio.org/sites/default/files/2017-11/17157_AFL-CIO_Constitution_10-17.pdf.

15.    Prior to the Rule, each LMRDA-covered labor organization had to use one of three DOL-prescribed forms to file its annual financial report, depending on the gross annual receipts of the labor organization. The thresholds for those forms were as follows: Labor organizations with gross annual receipts of $250,000 or more had to file a Form LM-2; labor organizations with gross annual receipts between $10,000 and $250,000 had to file a Form LM-3; and labor organizations with gross annual receipts less than $10,000 had to file a Form LM-4. *See* 29 C.F.R. §§ 403.3, 403.4. The Form LM-2 was an extremely detailed report, requiring each labor organization to compile numerous categories of information, including filling out 20 different schedules.[2] Plaintiff AFL-CIO's last report, for example, is approximately 200 pages. The DOL makes every Form LM-2, Form LM-3, and Form LM-4 filed by a labor organization publicly available, searchable, and exportable as data files.[3]

16.    On October 13, 2020, the DOL issued a notice of proposed rulemaking that proposed substantial changes to most labor organizations' LMRDA financial reporting requirements. *See* Labor Organization Annual Financial Reports: LM Form Revisions, 85 Fed. Reg. 64726 (Oct. 13, 2020). Those proposed changes included several new categories of information on the Form LM-2. It also proposed that labor organizations with gross annual receipts of at least $8 million would have to file a new form, titled the "Form LM-2 Long Form," with many more required categories and schedules. The proposed rule also sought comment on

---

[2] *See* DOL, Off. of Lab.-Mgmt. Standards, Form LM-2 Labor Organization Annual Report (2013), https://www.dol.gov/sites/dolgov/files/OLMS/regs/compliance/GPEA_Forms/forms/ lm2_form_facsimile_2022.pdf; DOL, Off. of Lab.-Mgmt. Standards, Instructions for Form LM-2 Labor Organization Annual Report (2022), https://www.dol.gov/sites/dolgov/files/OLMS/regs /compliance/GPEA_Forms/2020/efile/LM-2_instructions.pdf.

[3] *See Online Public Discourse Room*, DOL, Off. of Lab.-Mgmt. Standards (Mar. 17, 2026), https://www.dol.gov/agencies/olms/public-disclosure-room.

5

whether to increase the Form LM-2 threshold from $250,000 to $300,000 in annual gross receipts, below which a labor organization could file a less-burdensome Form LM-3.

17.    The proposed rule requested written comments by December 14, 2020. Ninety-seven individuals or entities submitted substantive comments, including Plaintiff AFL-CIO.

18.    The DOL never issued a final rule in response to these comments. Instead, it announced on March 17, 2021, that it had "withdrawn" the proposed rulemaking, informing the public on the regulatory agenda that "[a]fter review, the Department has determined to remove this entry as it is no longer necessary."[4]

19. The DOL did not propose any further changes to labor organizations' LMRDA financial reporting requirements until July 1, 2025, when it proposed issuing a new rule addressing just one subject addressed in the October 2020 notice of proposed rulemaking: the thresholds for the Form LM-2, Form LM-3, and Form LM-4. Specifically, the Department proposed increasing the Form LM-2 threshold from $250,000 to $450,000 in annual gross receipts and increasing the Form LM-3 threshold from $10,000 to $25,000 in annual gross receipts. *See* Filing Thresholds for Forms LM-2, LM-3, and LM-4 Labor Organization Annual Reports, 90 Fed. Reg. 28251 (July 1, 2025). The notice of proposed rulemaking did not mention the October 2020 notice of proposed rulemaking, nor did it mention a Form LM-2 Long Form or any potential filing threshold exceeding $450,000, nor that any such changes were being contemplated or considered.

20.    The proposed rule requested written comments by July 31, 2025. Eleven individuals or entities submitted substantive comments, including Plaintiff AFL-CIO.

---

[4]    *See Labor Organization Annual Financial Reports Rule Actions*, OIRA, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=1245-AA10    (last visited June 10, 2026).

21. The next action taken by the DOL concerning labor organizations' LMRDA financial reporting requirements was nearly a year later, on June 1, 2026, when it promulgated the Rule. Consisting of 230 pages in the Federal Register, the Rule not only addressed the thresholds for labor organizations to file the Form LM-2, Form LM-3, and Form LM-4 (the subject of the July 2025 notice of proposed rulemaking), but it implemented many of the changes proposed in the withdrawn October 2020 proposed rulemaking—including a Form LM-2 Long Form for certain filers. The Rule takes effect on July 1, 2026—just thirty days after the Rule was promulgated—and it will immediately apply to labor organizations for their next fiscal year that begins on or after July 1, 2026. Thus, for labor organizations like Plaintiff AFL-CIO whose fiscal year begins on July 1, 2026, the Rule will require major changes to accounting systems and reporting processes that must be implemented in very short order.

22. The Rule makes significant changes to the Form LM-2, which the Rule requires labor organizations with annual gross receipts between $350,000 and $40 million to file. For example, before the Rule, the Form LM-2 required labor organizations to report expenditures of at least $5,000 (in the aggregate) to a payor that are classified as "Representational Activities." The Rule now requires all such representational expenditures to be classified into one of the following two new categories: "Contract Negotiation and Administration" and "Organizing."

23. Similarly, before the Rule, the Form LM-2 required labor organizations to report expenditures of at least $5,000 (in the aggregate) to a payor that are classified as "Political Activities and Lobbying." The Rule now requires all such expenditures to be classified into one of the following two new categories: "Political Activities" and "Lobbying."

24. The Rule also requires Form LM-2 filers to attribute to each individual union officer and employee the amount of common-carrier and lodging expenses that the union

incurred for that officer/employee's business travel. For example, if a union sends a group of staff employees to travel for two-week-long collective bargaining negotiations and the union pays the hotel for a block of rooms and the airline for a group of seats, the union will now need to disaggregate the total airplane and hotel costs that the union pays for the group and assign to each employee a share and report that share on the Form LM-2 as if it were a disbursement directly to that employee. The same is true of payments for ordinary and customary business travel by an employee that the union covers via the union's credit card or by direct union payment to the relevant transportation or lodging provider. Plaintiff and its affiliates have countless disbursements and receipts that they will be required to itemize and categorize under the challenged Rule.

25.    These and other changes will require covered labor organizations, including Plaintiff and its affiliates, to dramatically retool their accounting systems almost instantly—including, in many instances, procuring a new accounting system and/or new subsidiary systems to track and report the detailed data needed to complete the new requirements. It will also require them to quickly undertake substantial staff training to their officers, employees, and service providers to ensure the new information required by the Form LM-2 is captured, coded, tracked, and reported out in a reliable manner. It is imperative that these tasks start immediately, because if a labor organization does not have systems in place for correctly recording this information contemporaneously with their execution—and before the Rule takes effect for that organization—the burdens will increase exponentially. This is because most commercially available accounting software does not permit the user to recode transactions that were already entered into the software, requiring transactions to be edited manually and then reconciled at the

end of the year. Plaintiff and its affiliates have thousands of transactions that they will be required to categorize under the Rule.

26.     The Rule also requires labor organizations with annual gross receipts of at least $40 million to file a new form, the Form LM-2 Long Form, which was proposed in the withdrawn October 2020 notice of proposed rulemaking. Based on recent Form LM-2 filings with the DOL, approximately 104 labor organizations will be required to file the Form LM-2 Long Form, including Plaintiff AFL-CIO. These labor organizations will be required to make even more changes to their accounting systems and reporting practices than Form LM-2 filers in order to comply with the new reporting requirements, as the Form LM-2 Long Form contains eleven additional and new schedules compared to the Form LM-2.

27.     In addition to the changes in the new Rule that apply to Form LM-2 filers (which also apply to Form LM-2 Long Form filers), Form LM-2 Long Form filers must, among other changes, itemize seven new categories of receipts where the amount that the labor organization receives from a payor is at least $5,000 in the aggregate annually, including membership dues and agency fees, all "per capita" payments that a union receives from its affiliates, and all rents that it receives.

28.     In the five-and-a-half years between October 2020 (when the agency initially solicited comments to proposed changes to the Form LM-2 and the proposed institution of the Form LM-2 Long Form) and June 2026 (when the agency promulgated the Rule), circumstances have materially changed. For example, there has been a significant increase in spear phishing and sophisticated cybercrime attacks against unions and their service providers—risks that are increased by the Rule's requirements that additional sensitive financial and vendor information be made publicly available. In addition, since the comment period expired, the Supreme Court

held in *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), that *all* compelled-disclosure requirements for associations violate the First Amendment unless they are narrowly tailored to an important government interest and can otherwise pass exacting scrutiny. Plaintiff and its affiliates would have underscored these and other increased burdens and legal developments if they had been given an opportunity to comment on the changes implemented by the Rule.

29.    While Defendants claim that the considerable burden placed on labor organizations by the Rule is justified by their cost-benefit analysis, that analysis is grounded in unexplained and arbitrary assumptions and unexplained and arbitrary departures from the evidence in the rulemaking record.

30.    The July 1, 2026 effective date for the Rule would require approximately 600 affected labor organizations, including Plaintiff AFL-CIO, to undertake significant and fundamental changes in their accounting systems and practices within a period of weeks in order to avoid the tremendous burden of retroactively re-coding transactions manually and then reconciling those transactions with the transactions in their accounting systems. The rulemaking record reflects that the time required for most affected unions to make such changes is far longer than the time the Secretary has allowed.

31.    Unless enjoined prior to its effective date of July 1, 2026, the Rule will irreparably injure Plaintiff, its member unions, and its member unions' affiliated local unions.

## FIRST CAUSE OF ACTION

**(Violation of the APA – Claim for Failure To Provide for Notice and Comment)**

32.    Plaintiff realleges all foregoing paragraphs and incorporate them by reference into this Count.

10

33.    The Administrative Procedure Act requires agencies to publish "notice of proposed rule making" in the Federal Register and to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b), (c).

34.    Defendants acknowledge in the Rule that the APA's notice-and-comment requirements apply to rules such as this one.

35.    Defendants' position is that they have satisfied the notice-and-comment requirements for the changes to the Form LM-2 and implementation of the Form LM-2 Long Form because they allowed for an opportunity to comment on the October 2020 notice of proposed rulemaking. But that rulemaking was expressly withdrawn, which terminated the notice-and-comment process. The agency is thus required to provide an additional opportunity for comment before implementing any changes.

36.    In July 2025, the DOL implicitly acknowledged that it needed to provide an opportunity for comment before implementing any of the proposed changes in the October 2020 notice of proposed rulemaking. That is when the DOL issued a new notice of proposed rulemaking for the Form LM-2, Form LM-3, and Form LM-4 thresholds—a subject that was squarely addressed in the October 2020 notice of proposed rulemaking.

37.    Even if there could be an unusual circumstance where an agency is permitted to issue a final rule after withdrawing a proposed rule, this would not be it. The October 2020 notice of proposed rulemaking set a deadline of December 14, 2020 for comments—nearly five-and-a half years before the Rule was promulgated. And circumstances have materially changed since the 2020 comment period. For example, since 2020, there has been a significant increase in spear phishing and sophisticated cybercrime attacks against unions and their service providers—

11

risks that are increased by the Rule's requirements that additional sensitive financial and vendor information be made publicly available. In addition, since the comment period has expired, the Supreme Court held in *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), that *all* compelled-disclosure requirements for associations violate the First Amendment unless they are narrowly tailored to an important government interest and can otherwise pass exacting scrutiny. Plaintiff and its affiliates would underscore these and other increased burdens and legal developments if they were given an opportunity to comment on the changes implemented by the Rule.

38.     The APA instructs that a reviewing court shall "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

39.     The aspects of the Rule that change the Form LM-2 requirements and that implement the Form LM-2 Long Form do not adhere to the procedural requirements of 5 U.S.C. § 553(b) and (c) and thus violate the APA. They are unlawful and should be set aside.

## SECOND CAUSE OF ACTION

(**Violation of the APA – Claim that the Effective Date Is Arbitrary and Capricious**)

40.     Plaintiff realleges all foregoing paragraphs and incorporate them by reference into this Count.

41.     The APA requires a reviewing court to set aside agency actions, findings, and conclusions that are arbitrary and capricious. *See* 5 U.S.C. § 706.

42.     Defendants' action in setting a July 1, 2026 effective date for the Rule is founded on unexplained and arbitrary assumptions and unexplained and arbitrary departures from the evidence in the rulemaking record, imposes extraordinary burdens on unions that the Secretary

has failed to take into account, is unjustified by any countervailing benefit, and therefore is arbitrary and capricious.

43.    The Rule's July 1, 2026 effective date is made even more arbitrary given that, more than five years earlier, the DOL withdrew the agency's proposed changes to the Form LM-2 and proposed initiation of the Form LM-2 Long Form. Because Plaintiff and its affiliates reasonably believed that this proposed rulemaking had been abandoned, they had not taken any steps to prepare for significant changes to LMRDA financial reporting requirements until the Rule was suddenly resurrected on June 1, 2026. This has left Plaintiff, its affiliates, and their service providers scrambling to make their best efforts to modify their accounting systems and recordkeeping practices to comply with the new Form LM-2 and Form LM-2 Long Form requirements by the date on which each affected union's fiscal year begins.

44.    The Rule's effective date must therefore be held unlawful and set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## THIRD CAUSE OF ACTION

(**Violation of the APA – Claim that Substantive Aspects of the Rule Are Arbitrary and Capricious**)

45.    Plaintiff realleges all foregoing paragraphs and incorporate them by reference into this Count.

46.    The APA requires a reviewing court to set aside agency actions, findings, and conclusions that are arbitrary and capricious. *See* 5 U.S.C. § 706.

47.    Several substantive aspects of the Rule promulgated by Defendants are arbitrary and capricious, as they are based on a burden-benefit analysis that is founded on unexplained and arbitrary assumptions and unexplained and arbitrary departures from the evidence in the rulemaking record and that is in critical respects facially implausible. In addition, the Rule never

13

even attempts to explain how the new compelled-disclosure requirements survive the required exacting scrutiny. *See Ams. for Prosperity Found.*, 594 U.S. at 607–08.

48.     The aspects of the Rule that are arbitrary and capricious include, but are not limited to, (1) the requirement that Form LM-2 and Form LM-2 Long Form filers classify representational expenditures as either contract negotiation or organizing; (2) the requirement that Form LM-2 and Form LM-2 Long Form filers classify political expenditures as either political activities or lobbying; (3) the requirement that Form LM-2 and Form LM-2 Long Form filers itemize common-carrier and lodging costs as a disbursement for each traveling officer or employee where the labor organization paid those costs directly; (4) the requirement that Form LM-2 Long Form filers itemize all benefit disbursements for each officer or employee, even where those benefit costs are difficult to allocate to individual officers or employees; and (5) the requirement that Form LM-2 Long Form filers itemize membership dues or agency fees that they directly receive.

49.     These aspects of the Rule must therefore be held unlawful and set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## FOURTH CAUSE OF ACTION

### (Violation of the APA – Claim that Substantive Aspects of the Rule Are Not in Accordance with Law)

50.     Plaintiff realleges all foregoing paragraphs and incorporate them by reference into this Count.

51.     The APA requires a reviewing court to set aside agency actions, findings, and conclusions that are not in accordance with law. *See* 5 U.S.C. § 706.

52.     Title II of the LMRDA requires labor organizations to file an annual financial report "containing [certain] information in such detail as may be necessary accurately to disclose

its financial condition and operations for its preceding fiscal year." 29 U.S.C. § 431(b). That information includes, but is not limited to, the organization's "assets and liabilities at the beginning and end of the fiscal year," "receipts of any kind and the sources thereof," and "salary, allowances, and other direct or indirect disbursements (including reimbursed expenses)" to officers and employees. The statute requires the Secretary of Labor to "prescribe" "categories" for the disclosure of this information.

53.     In several respects, the Rule compels labor organizations to make disclosures of a kind and degree that § 431(b) does not authorize and are not reasonably related to any compelling government interest. Those aspects include, but are not limited to, (1) the requirement that Form LM-2 and Form LM-2 Long Form filers classify representational expenditures as either contract negotiation or organizing; (2) the requirement that Form LM-2 and Form LM-2 Long Form filers classify political expenditures as either political activities or lobbying; (3) the requirement that Form LM-2 and Form LM-2 Long Form filers itemize common-carrier and lodging costs as a disbursement for each traveling officer or employee where the labor organization paid those costs directly; (4) the requirement that Form LM-2 Long Form filers itemize all benefit expenditures for each officer or employee, even where those benefit costs are difficult to allocate to individual officers or employees; and (5) the requirement that Form LM-2 Long Form filers itemize membership dues or agency fees that they receive directly.

54.     These aspects of the Rule must therefore be held unlawful and set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)    Enter an injunction postponing the effective date of the Rule;

(b)    Declare that the changes to the Form LM-2 and the implementation of the Form LM-2 Long Form set forth in the Rule are unlawful under the Administrative Procedure Act and are therefore null and void;

(c)    Vacate the changes to the Form LM-2 and the implementation of the Form LM-2 Long Form set forth in the Rule;

(d)    Award Plaintiff its attorneys' fees and costs of this litigation; and

(e)    Grant such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

*/s/ Leon Dayan*
Leon Dayan (DC Bar # 444144)
Jacob Karabell (DC Bar # 996066)
Adam Bellotti (DC Bar # 1020169)
Fred Wang (DC Bar # 90031826)
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street N.W.
Suite 1000
Washington, DC 20005
(202) 842-2600
ldayan@bredhoff.com
jkarabell@bredhoff.com
abellotti@bredhoff.com
fwang@bredhoff.com

Matthew Ginsburg (DC Bar # 1001159)
Maneesh Sharma (DC Bar # 1033407)
AFL-CIO
815 Sixteenth Street N.W.
Washington, DC 20006
(202) 637-5336
mginsburg@aflcio.org
msharma@aflcio.org

*Counsel for Plaintiff*

16